WESTLAND CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19755.   Promulgated February 21, 1929.

*Edwin P. Mack, Esq.,* and *C. F. Sammond, Esq.,* for the petitioner.
*J. F. Greaney, Esq.,* and *Brice Toole, Esq.,* for the respondent.

■■■■■■■■■■■■

OPINION.

TRUSSELL: The sole question at issue here is the value on March 1, 1913, of a lease paid in for stock of petitioner in 1912 and which had been acquired two years previously for $50,000 cash.

The amount of petitioner's stock at par issued for the lease in question has no weight in the ascertaining of its value, as all of petitioner's stock was issued to the owners of the lease and in proportion to their interests therein.

The record discloses that the lease in question, executed in 1896 for a term of 99 years, was purchased in 1910 by the organizers of petitioner for $50,000. At that time it had approximately 86 years to run and the conditions imposed upon the prior lessees as to expenditures for improvements had already been complied with. The only obligation on the lessee from the date of purchase by the partnership was to pay taxes and a ground rent of $1,500 per annum. The lease also reserved title in the lessee to the improvements on the property at the time of its expiration and provided for their purchase by the lessor. At the time of its purchase the value of the property was such, as shown by the proof, as to make possible a rental netting a fair return on an investment in excess of $50,000. At that time there was a very marked and definite increase in progress in property values in the immediate vicinity, making it possible to determine that a very substantial increase in rentals could shortly be obtained.

The testimony in respect to the purchase of this lease by the partnership of Benj. M. Weil's Sons Co. was that this partnership had long represented the Litt Estate in respect to its real estate in Milwaukee and in the final winding up of the estate had disposed of all other property with exception of the lease in question, and that the executors of the estate offered it to the partnership at $50,000 to close the estate. It is testified that it was recognized that the lease had a greater value than this but the executors wished to close the administration of the estate and were willing for that reason to sacrifice something, and, realizing that the lease was worth more than this figure, these agents were given the opportunity to take it over at that price to compensate them for services rendered it in disposing of other properties of the estate for which they had been able to obtain very handsome prices.

Following the purchase of this lease property values increased rapidly in the immediate vicinity and the execution of long-term leases on such property became more frequent and such leases were often bought and sold and a recognized market for them existed. Numerous large building operations were either carried out, started, or determined upon and announced between that date and March 1, 1913. Other properties in the immediate neighborhood and less advantageously situated were leased for long terms for rentals enormously in excess of that received under the lease in question. Even in 1910 one such property, slightly smaller in size than the one here in question and only two doors away, rented under a lease for 25 years at a rental beginning at $5,000 and increasing during the term to $6,000 per annum. This latter property was an " inside lot " whereas petitioner's was on the corner of the alley and for this reason had a substantially greater value. In 1912 a property in the adjoining block two feet wider than petitioner's lot leased for 25

years at $7,000, increasing to $8,000, with a privilege of extension for five years more at $10,000 per year.

During the period in question the customary and usual basis for rental reserved by an owner under a long-term lease of this character was 5 per cent on the value of the land, and an increase in such value in properties in this neighborhood was anticipated and provided for by increases in the stipulated rental at certain periods in the lease term. The testimony as to values is by three witnesses who had for many years dealt in property in this vicinity and who qualified amply as having an intimate and accurate knowledge of such properties and their values and the values of long-term leases thereon. Two of these men ascribed a value to this property at March 1, 1913, of $123,000 for the land and $12,000 for the building, and the third $140,000 for the land, and $22,000 for the building. For the year 1913 the property was assessed for taxation at $122,500 for land and $12,000 for the building. Two of those witnesses testified to a reasonable value for the lease of $105,000 on March 1, 1913, and the third to a value of $100,000.

We have carefully considered this testimony and the bases explained by the witnesses for the opinions expressed as to values both for the property and for the lease and conclude that on March 1, 1913, the lease in question had a reasonable market value of $100,000.

The deficiency should be redetermined in accord with the foregoing findings of fact and opinion.

*Judgment will be entered pursuant to Rule 50.*